# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

DOUGLAS J. PHILPOTT,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

NO. C11-367-MJP-JPD

REPORT AND RECOMMENDATION

Plaintiff Douglas J. Philpott appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be affirmed and this case dismissed with prejudice.

## I. FACTS AND PROCEDURAL HISTORY

At the time of his administrative hearing, plaintiff was a 53 year-old man with a high school education and 18 months of a 2 year chef's school. Administrative Record ("AR") at 35, 39. His past work experience includes employment as a cook, restaurant manager and stock clerk. AR at 27. Plaintiff was last gainfully employed in March 2006. AR at 35.

REPORT AND RECOMMENDATION - 1

On September 25, 2006, plaintiff filed a claim for DIB, alleging an onset date, after amendment of April 1, 2006. AR at 18. Plaintiff asserts that he is disabled due to hepatitis C, hemorrhoids, obesity, lower extremity edema/neuropathy, sleep disturbance and chronic pain syndrome. AR at 20.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 18. Plaintiff requested a hearing which took place on March 11, 2009. AR at 29-74. On May 13, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 18-28. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On March 8, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 4.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Philpott bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On May 13, 2009, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2007.

2. The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of April 1, 2006 through his date last insured of September 30, 2007.

3. Through the date last insured, the claimant had the following severe impairments: hepatitis C, hemorrhoids, obesity, lower extremity edema/neuropathy, sleep disturbance, and chronic pain syndrome.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a wide range of sedentary work as defined in 20 CFR 404.1567(a) except the claimant would have been unable to perform more than occasional climbing, stooping, crouching, or crawling or tasks that involved concentrated exposure to hazards, including machinery and unprotected heights or vibration.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born XXXXX, 1956 and was 50-51 years old, which is defined as closely approaching advanced age, during the pertinent period.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. The claimant has acquired work skills from past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 23, 2005, the alleged onset date, through September 30, 2007, the date last insured.

AR at 20-28.

## VI. ISSUES ON APPEAL

The plaintiff's date last insured ("DLI") was September 30, 2007. The principal issues on appeal are:

1. Did the ALJ err by entering an adverse credibility determination?

2. Did the ALJ properly evaluate the medical evidence, and particularly the opinion of Dr. Furlong?

3. Did the ALJ err by failing to request information from UNUM Life Insurance Company?

4. Did the ALJ err in her RFC determination?

5. Did the ALJ err in finding plaintiff had transferable work skills?

6. Did the ALJ err at Step 5 regarding the number of jobs available?

Dkt. No. 21.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

## VII. DISCUSSION

### A. The ALJ Did Not Err in Making an Adverse Credibility Assessment

#### 1. Standard for Evaluating Credibility

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

## 2. The ALJ Properly Found Plaintiff to be Less Than Credible

The ALJ determined that plaintiff was less than credible due to (1) symptom magnification, (2) conservative treatment, and (3) normal activities of daily living that were inconsistent with allegations of total disability. AR at 24, 27. The ALJ detailed the basis for her credibility assessment in great detail. AR at 25-27. Among other things, the ALJ noted:

> The fact that physicians repeatedly encouraged the claimant to increase his exercise also establishes that he was not felt to be debilitated by his impairments. It is also noted that the claimant's admissions that he was going to travel to Florida for a month to buy and antiques store, that he had slept on the ground in a sleeping bag for 5 days, that he had lifted heavy bags of coins, and that he enjoyed doing art are inconsistent with his allegations of debilitating pain, fatigue, arthralgias, and sleep disturbance.

> Noteworthy in this case is the claimant's treatment history during the pertinent period. The record fails to show that the claimant, even if he sought significant forms of treatment, did not require significant forms of treatment such as periods of hospital confinement, repeated emergency room treatment, or significant office care other than for routine maintenance. Treatment recommendations have consistently included the need for the claimant to become more active and to exercise.

AR at 26 (record citations omitted). The ALJ's assessment is supported by substantial evidence in the record (*see e.g.,* AR at 266, 257-279, 263, 259, 312-34, 272, 265, 316). Although the credibility assessment challenge was the second issue raised by plaintiff in his appeal, it was substantially dropped in the reply brief, in light of the Commissioner's brief, and for good reason.

It is the duty of the ALJ in the first instance to resolve credibility issues. The ALJ properly found the plaintiff to be less than credible, using the standards set forth in Section VII (1) above, and that finding is supported by substantial evidence. The ALJ did not err in finding plaintiff to be less than credible, and plaintiff makes no serious argument to the contrary.

REPORT AND RECOMMENDATION - 8

B. The ALJ Did Not Err in Her Evaluation of the Medical Evidence and the RFC is Supported by the Medical Evidence

Plaintiff's next assignment of error is that the ALJ erred in review and assessment of the medical evidence, and particularly her treatment of the medical opinions of Drs. Drennan and Furlong.

*1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the

REPORT AND RECOMMENDATION - 9

uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. Fred Drennan, M.D., Richard M. Furlong, M.D, and Kris Kowdley, M.D.

Dr. Drennan and Dr. Furlong both treated plaintiff in 2006, and ultimately referred him to Dr. Kowdley for further follow up and evaluation in November 2007, just after plaintiff's DLI. Plaintiff does not dispute that the ALJ considered the medical records and opinions in question. Plaintiff does argue that the RFC found by the ALJ is contrary to the medical opinions of these doctors.

The ALJ found that through plaintiff's DLI,

> the claimant had the residual functional capacity to perform a wide range of sedentary work as defined in 20 CFR 404.1567(a) except the claimant would have been unable to perform more than occasional climbing, stooping, crouching, or crawling or tasks that involved concentrated exposure to hazards, including machinery and unprotected heights or vibration.

REPORT AND RECOMMENDATION - 10

AR at 24. Plaintiff claims this RFC fails to take into account rectal bleeding (Dkt. No. 21 at 11). Plaintiff further asserts that even if the ALJ were correct in dismissing the rectal bleeding as merely derived from hemorrhoids, plaintiff's general fatigue and obesity would render him unable to sustain a regular 40 hour work week. Finally, plaintiff argues the RFC failed to account for the level of plaintiff's "pain and fatigue." *Id.*

The medical opinions of Drs. Drennan, Furlong and Kowdley do not support a more limited RFC than found by the ALJ. With the possible exception of Dr. Furlong's opinion that plaintiff had been unable to work from November 2007 through January 2008 (AR at 261), plaintiff's brief does not make clear which opinions the plaintiff asserts were improperly rejected. In his opening brief, plaintiff states:

> More importantly, Plaintiff's physicians did provide adequate findings to support their opinions. On August 23, 2006, treating physician Fred Drennan, M.D., found significant liver disease (Tr. 214-15). On September 12, 2006, doctors at Virginia Mason found him to be in end stage cirrhosis, warranting a liver transplant (Tr. 206-07). October 2, 2006, Dr. Drennan found Plaintiff's liver to be palpable, firm, and slightly nodular, and considered him a candidate for liver transplant due to the difficulty of treating his Hepatitis C (Tr. 201-03). Although the liver disease eased over the period at issue, no physician who treated Plaintiff ever felt he was not truthful in his subjective claims or that he was free of very serious problems, in a strange combination, making work impossible.

Dkt. 21 at 10.

The conclusory arguments by plaintiff do not withstand scrutiny. First, no physician concluded that work was impossible for plaintiff. The ALJ assigned little weight to Dr. Furlong's work limitation because shortly after the note, plaintiff was seen by Dr. Kowdley who evaluated him and opined he was not a candidate for liver transplant and encouraged him to increase his activity level. AR at 259-60. Second, there was nothing in the November work excuse note from Dr. Furlong to indicate that the conditions leading to the note would preclude work for a 12 month period of beyond. AR at 26. Third, State reviewing physicians

REPORT AND RECOMMENDATION - 11

concluded plaintiff could perform at the "light" exertional level, the ALJ limiting his RFC to a sedentary exertional level, a level more favorable to plaintiff.

The role of this Court is limited. As noted above, the Court may not substitute its judgment for that of the Commissioner. *Thomas*, 278 F.3d at 954. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.* It may be possible to interpret the medical evidence in the fashion suggested by the plaintiff. However, it cannot be concluded that this is the only rational interpretation of the medical evidence. The ALJ did not err in her review of the medical evidence or her RFC assessment.

### C. The ALJ Did Not Err in Her Obligation to Develop the Record

In 2006, plaintiff began receiving long term disability from UNUM, the Costco long term disability insurance provider. Plaintiff asserts that it is unlikely that a private long term disability carrier would pay out $1,196 per month if plaintiff were not disabled, and the ALJ failed in her obligation to fully develop the record by not obtaining the UNUM records. Dkt. 21 at 16.

The ALJ has an independent duty to develop the record, regardless of whether or not a claimant is represented by counsel. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). However, [a]n ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v.* Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

Here, plaintiff testified he was receiving long term disability benefits. AR at 44-45. At the administrative hearing, plaintiff's attorney acknowledged that the ALJ had all the relevant medical records for the hearing. AR at 33. On September 15, 2010, plaintiff's current attorney submitted medical records to the Appeals Council that were contained in the UNUM file,

REPORT AND RECOMMENDATION - 12

nearly 17 months after the ALJ's decision. AR at 185. Some of these were duplicates of records that were before the ALJ. *Id.* Some were not. *Id.* However, plaintiff fails to indicate how any of them would have a material bearing on the RFC that was found by the ALJ. For example, plaintiff's counsel indicates that they include a finding of a sedentary exertional level. *Id.* However, this is also the exertional level found by the ALJ in her RFC assessment. AR at 24.

Neither the ALJ nor the Appeals Council had the duty to contact UNUM, as the evidence was adequate to make a disability determination, and the plaintiff has failed to demonstrate materiality of the records that were actually not considered. *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005). If simply providing medical records 17 months after an administrative decision is sufficient to require a remand, there would be no finality in cases. New records, some of which post-date plaintiff's DLI, do not by themselves make a record inadequate or otherwise ambiguous, even if counsel insists that this is the case. Instead, a materiality showing is required, and like other assignments of error in this case, nothing beyond assertions is provided. The ALJ did not err.

### D. The ALJ Did Not Err at Step 5

Plaintiff also argues that the ALJ erred at Step 5 by finding the plaintiff had transferrable job skills and that plaintiff could perform jobs in the national economy. Plaintiff assigns error, challenging the hypothetical posed to the Vocational Expert ("VE") and the number of jobs that would be available. Dkt. 21 at 12-14.

During the hearing, the ALJ asked the VE to describe plaintiff's past relevant work. His prior work was in excess of a sedentary exertional level. The ALJ found that plaintiff's

past relevant work as a wholesaler was skilled with a Specific Vocational Preparation ("SVP")[3] level of 7 and required understanding food and nutrition, understanding food prices, and contacting others. AR at 27. After going through the analysis, the ALJ then asked the VE if there were transferrable skills that plaintiff had that would be transferrable to jobs that were limited to a sedentary exertional level. The VE testified that there were 1,187 diet clerk positions in Washington and 56,304 in the United States. AR at 68. The transferrable skills would include a knowledge of food and preparation issues, although the person would not be a nutritionist. AR at 69-70. The VE also testified that the plaintiff could perform as a wholesaler, with 416 jobs in Washington State and 15,760 in the United States. AR at 68-69. The transferrable skills include the ability to understand organizational skills, and the plaintiff who was a store owner or restaurant manager had to understand food prices and understand the wholesale concept. AR at 69.

Plaintiff raises three objections. First, plaintiff argues that this ignores his testimony about having blurry vision and his alleged need for eye drops. Second, plaintiff asserts that although his past relevant work required skills rated at an SPV 7 level and the diet clerk position is only a semi-skilled position with an SVP level of 3, it is a different job, and not close enough to his former job, given his age. Finally, plaintiff urges there are simply not enough positions available to constitute a "significant" number of jobs. None of the arguments has merit.

The only evidence of plaintiff's alleged irregular tear production is an off-hand comment by plaintiff. AR at 39, 55, 58-59. There are no medical records to support the

---

[3] *The Dictionary of Occupational Titles* ("DOT") lists a SPV time for each described occupation. Using the skill level definitions in 20 C.F.R. §404.1568, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. *See* U.S. Dept. of Labor, DOT, App. C (4th ed. 1991).

REPORT AND RECOMMENDATION - 14

claim.[4] The plaintiff was found to be non-credible. Moreover, even his own testimony was too vague to support any conclusion that he had vision problems that would interfere with an ability to do the job. Apparently he reads less than he used to (AR at 39), without glasses, he has insufficient eye fluid so things can be "hazy," but, if he wears glasses he can become unbalanced. AR at 59.

The hypothetical to the VE did not include limitations of irregular tear production. A hypothetical is inadequate and is error if it fails to include all limitations found credible and that are supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, the ALJ's hypothetical was proper, because it included all limitations found credible and all limitations supported by substantial evidence in the record.

Plaintiff's second argument is that the lower SVP of 3 associated with the diet clerk job does not mean that plaintiff, who was previously performing a skilled position with an SVP of 7 could perform the job, in light of plaintiff's increasing age. In other words, plaintiff argues the job of diet clerk is too easy -- the "job of Diet Clerk should be ruled out as not skilled enough to give plaintiff an adaptation or competitive advantage." Dkt. 21 at 13.

Plaintiff's argument seems to make a policy argument against using transferability of skills as a consideration for disability, yet transferability is specifically recognized by the regulations. They provide in part that transferability is most probable where (as here): (1) the same or lesser degree of skill is required; (2) the same or similar tools and machines are used; and (3) the same or similar raw materials, products, processes or services are involved. 20 C.F.R. §404.1568(d)(2). Plaintiff's argument on transferability fails.

---

[4] There was a reference to blurry vision in the record; however, the reference included a statement attributed to plaintiff that the blurring of vision was getting better. AR at 216.

REPORT AND RECOMMENDATION - 15

Finally, plaintiff asserts the number of jobs is too small to constitute a "significant number of jobs." The VE testified that there were 1,187 diet clerk positions available in the State of Washington and 56,304 available in the United States. At first blush, plaintiff's argument that a mere 1,187 jobs in Washington does not constitute a "significant number" may seem persuasive. However, there are 56,304 such positions in the national economy. Federal courts must give deference to the Social Security Administration's interpretation of its own statutes and regulations. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (courts must give deference to agency interpretations of its own statutes and regulations); *Pagter v. Massanari*, 250 F.3d 1255, 1262 (9th Cir. 2001). Work exists in the national economy when there are "a significant number of jobs (in one or more occupations) having requirements" which the claimant is "able to meet" with the claimant's "physical or mental abilities and vocational qualifications." The phrase "work which exists in the national economy" is defined in the Social Security Act to mean work existing "in significant numbers *either* in the region where" the claimant "lives or in several regions of the country." 42 U.S.C. § 423(d) (2)(A) (emphasis added). *See also* 20 C.F.R. § 416.960(c)(1) ("Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy *either in the region where you live or in several regions in the country.*") (emphasis added). In light of the Ninth Circuit's holding that as few as 1,266 jobs constituted a "significant number," the Court must find that the existence of 1,187 diet clerk jobs in the State of Washington and 56,304 nationally constitutes a "significant number" for step 5 purposes. *See Barker v. Secretary of Health & Human Services*, 882 F.2d 1474, 1478-79 (9th Cir. 1989). *See also Staggs v. Astrue*, 2010 WL 4720341, at *13 (W.D. Wash. May 24, 2010) (100,000 jobs nationally and 125 jobs locally constitutes a "significant number").

The ALJ did not err at Step 5.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that the decision of the Commissioner be AFFIRMED and that this case be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 18th day of November, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge